UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| United States Telecom Association, Industry Traceback Group, Jonathan Spalter, Joshua Bercu, & Warren Currie<br><br>Petitioners,<br><br>v.<br><br>Michael D. Lansky, LLC, d/b/a Avid Telecom, and Michael Lansky,<br><br>Respondents. | Misc. No. _____<br><br>(Related to *Lansky et al. v. TransNexus, Inc.* pending in the United States District Court for the Northern District of Georgia, No. 1:22-cv-04829-SEG) |

## MEMORANDUM IN SUPPORT OF PETITIONERS' MOTION TO QUASH NON-PARTY SUBPOENAS FOR DEPOSITION TESTIMONY AND RECORDS IN A CIVIL ACTION

Non-Parties United States Telecom Association d/b/a USTelecom – the Broadband Association ("USTelecom"), USTelecom's wholly owned subsidiary Industry Traceback Group ("ITG"), and individuals Jonathan Spalter (USTelecom President and CEO), Joshua Bercu (Vice President, Policy & Advocacy for USTelecom and Executive Director of ITG), and Warren Currie (USTelecom Robocall Traceback Fraud Specialist), respectfully submit this memorandum of law in support of their joint motion, filed pursuant to Federal Rules of Civil Procedure 26 and 45, to quash three deposition subpoenas served upon them on September 28, 2023, by Michael D. Lansky, LLC and Michael Lansky (collectively, "Lansky") (the "Subpoenas"). The Subpoenas seek the deposition testimony of Messrs. Spalter, Bercu, and Currie (the "Individual Recipients"), and the production of a broad range of records relating to ITG's operations and communications with third parties.[1]

---

[1] Copies of the Subpoenas are attached hereto as **Exhibit A** (Spalter), **Exhibit B** (Bercu), and **Exhibit C** (Currie).

1

Lansky issued the Subpoenas in a civil action pending in the United States District Court for the Northern District of Georgia, *Lansky et al. v. TransNexus, Inc.*, 1:22-cv-04829-SEG (the "Georgia Action").  In the Georgia Action, Lansky sued TransNexus, Inc. for defamation, false light invasion of privacy, tortious interference with business and contractual relationships, and intentional infliction of emotional distress, all alleged to be in violation of Georgia state law. Lansky's claims in the Georgia Action all stem from the allegation that TransNexus published a defamatory blog post about Lansky in 2022, which has since been removed.  The complaint alleges that the blog post falsely suggested through an inaccurate flow chart and a doctored transcript of a Skype conversation that Lansky was involved in making unlawful robocalls.[2]

As further described below, ITG is a neutral consortium established in 2015 by the United States Telecom Association ("USTelecom"), a U.S. trade association of telecommunications businesses.  ITG was subsequently appointed by the FCC under the TRACED Act, Pub. L. No. 116-105, 133 Stat. 3274 (2019), to conduct tracebacks of illegal robocalls.  Neither ITG nor any of the Individual Recipients is a party to the Georgia Action. Nor is ITG alleged in the Complaint to have had any role in TransNexus's alleged conduct. Rather, as the fifty-request long Subpoenas make clear, Lansky is using the Georgia Action as a means of obtaining evidence for two *other* actions—both in federal court in Arizona.

In the first action, Lansky is defending a suit against fifty state attorneys general/related consumer protection agencies for violating telemarketing sale rules, including robocalls, *see Arizona et al. v. Michael D. Lansky, LLC*, 4:23-cv-00233-CKJ, ECF 1 (complaint filed May 23, 2023) (D. Ariz.) (the "AG Action"), attached as **Exhibit E**.  The AG Action is, apparently, based in part on data lawfully obtained by regulators from ITG and, of course, presents

---

[2] A copy of the First Amended Complaint in the Georgia Action is attached as **Exhibit D**.

2

potentially substantial and serious consequences for Lansky and his company. *See, e.g.*, *id.* ¶¶ 100-110. Notwithstanding the fact that the AG Action is wholly unrelated to the single blog post at issue in the Georgia defamation suit, it is primarily the AG Action that is the focus of the document demands in the Subpoenas here.

In the second action involving Lansky, *Avid Telecom, LLC et al. v. David Frankel & ZipDX, LLC*, 4:22-cv-00558-JCH, ECF 1 (Complaint filed Dec. 14, 2022) (D. Ariz.) (attached as **Exhibit F)**, Lanksy is again pursuing an action for defamatory conduct/libel by another non-party to this suit, David Frankel, and Frankel's company, ZipDX LLC ("ZipDX").

It seems that because ITG has, pursuant to its FCC-appointed role, at times identified Lansky as associated with a telecom service provider that has transmitted calls likely to be unlawful, Lanksy now seeks to uncover everything and anything about ITG's operations. Whatever the merits of these efforts in either the AG Action or the defamation suit against Frankel (and to be clear many such requests remain meritless), the demands are improper in the context of these Subpoenas issued in the Georgia Action. This is particularly so because ITG has *already produced* records in the Georgia Action pursuant to a third-party subpoena (attached as **Exhibit G**) issued to the organization in June by defendant TransNexus. Because the Subpoenas are plainly overbroad and disproportionate to the needs of the Georgia Action, and because they would result in undue burden and expense to non-parties that greatly outweigh their likely benefit, the Subpoenas should be quashed.

## JURISDICTION & VENUE

Lansky issued the Subpoenas in a civil action pending in the United States District Court for the Northern District of Georgia, *Lansky et al. v. TransNexus, Inc.*, 1:22-cv-04829-SEG (the "Georgia Action"). The movants have filed their motion to quash in this Court pursuant to

Federal Rule of Civil Procedure 45, which mandates that an objecting party file such a motion in the "the district where compliance is required." Fed. R. Civ. P. 45(d)(3)(A).

Rule 45 provides that the Court "must" quash or modify a subpoena that subjects the target to undue burden or that fails to provide a reasonable time to comply. *Id.* Rule 26, which applies to all discovery, further prohibits discovery tactics that lead to inefficient and unduly burdensome outcomes. Fed. R. Civ. P. 26(b)(1).

The Subpoenas here raise the concerns targeted in both Rules. They require—just two weeks following service—three different ITG personnel (including the President and CEO of USTelecom, who has little day-to-day involvement in ITG's operations, and the Executive Director of ITG) to sit for 21 hours of total deposition time. The Subpoenas further require the Individual Recipients to produce a broad range of records in response to 50 requests in the same unreasonably short time frame. As discussed below, many of the requested documents have no conceivable relevance to Lansky's claims in the Georgia Action and are plainly not reasonably calculated to lead to the discovery of admissible evidence in that case.

## FACTUAL BACKGROUND

The ITG is a neutral consortium established in 2015 by the United States Telecom Association ("USTelecom"), a trade association of telecommunications businesses based in the United States, which is dedicated to identifying the voice service providers responsible for transmitting illegal robocalls. Illegal robocalls are frequently coupled with misleading or inaccurate telephone numbers displayed as caller ID information and are often intended to facilitate fraudulent or other harmful activities. The ITG traces calls back from the final recipient to the robocall caller—often routing through multiple service providers (or "hops")—

until the ITG identifies the originator of the suspicious calls and, if possible, the caller.[3] Tracebacks, therefore, are a backward-looking inquiry. ITG does not and cannot initiate tracebacks against any particular voice service provider. Rather, ITG initiates tracebacks on robocalls that, based on information available to the organization including recordings of the calls, the team has a reasonable basis to believe are unlawful.[4]

To address the growing nuisance and threat presented by illegal robocalls, Congress in December 2019 enacted the TRACED Act. Pallone-Thune Telephone Robocall Abuse Criminal Enforcement and Deterrence Act, Pub. L. No. 116-105, 133 Stat. 3274 (2019). Among other things, the Act required the FCC to issue rules "for the registration of a single consortium that conducts private-led efforts to trace back the origin of suspected unlawful robocalls." *Id.* § 13(d)(1), 133 Stat. 3287. In 2020, the FCC designated the ITG as the registered traceback consortium and has re-designated it each year since.[5]

Each of the Individual Recipients, two of whom are c-suite level, is employed by USTelecom. Mr. Spalter is the President and Chief Executive Officer of USTelecom, Mr. Bercu, an attorney, is Vice President, Policy & Advocacy for USTelecom and Executive Director of ITG, and Mr. Currie is a Robocall Traceback Fraud Specialist for USTelecom.

---

[3] *See generally* ITG's educational materials *available at* https://tracebacks.org/about/.

[4] Voice service providers are generally restricted from sharing call detail records, 47 U.S.C. § 222(c), but may do so "to protect the rights or property of the carrier, or to protect users of those services and other carriers from fraudulent, abusive, or unlawful use of, or subscription to, such services," *id.* § 222(d)(2). The FCC has repeatedly indicated that sharing information to stop unlawful robocalls, including for traceback, meets this sharing exception. *See, e.g., Advanced Methods to Target & Eliminate Unlawful Robocalls*, CG Docket No. 17-59, Report and Order and Further Notice of Proposed Rulemaking, 32 FCC Rcd 9706, 9724 ¶ 53 (2017).

[5] *See Implementing Section 13(d) of the Pallone-Thune Robocall Abuse Criminal Enforcement and Deterrence Act* (*TRACED Act*), EB Docket No. 20-22, Report and Order, 36 FCC Rcd 12782 (EB 2021).

## LOCAL RULE 7.1(m) STATEMENT

On September 28, 2023, through counsel, the Individual Recipients were served with the Subpoenas, all three of which are substantively identical to one another. The Subpoenas require each of the Individual Recipients to appear for depositions in the District of Columbia on October 10, 11, and 12, respectively, and each Subpoena also includes 50 separate demands for documents, which can be divided into the following categories:

- Documents concerning each Individual Recipient's employment and job responsibilities (Request Nos. 1 and 2)

- Documents sufficient to identify all past and present employees and independent contractors who have ever worked for or provided services to the ITG (Requests 34-35)

- Documents concerning webinars and testimony given by the Individual Recipients, without limitation as to subject matter (Requests 15-16)

- Documents relating to the ITG's membership application process, application history for the consortium "since its inception," and ITG's handling of Lansky's unsuccessful application for membership (Requests 5-9)

- Documents relating to the ITG's purchase of particular software (Request 48)

- Documents relating to the ITG's procedures and processes for making tracebacks, and documentation about calls that have been traced back *to any member of ITG*, and sometimes to Lansky (Requests 10-11, 17-23, 40, 49)

- Documents and communications between the ITG and federal regulators, including the Federal Communications Commission and the Federal Trade Commission (Requests 3-4)

- Documents and communications between ITG and various state regulators about Lansky (Requests 28-31, 50)

- Documents relating to the provision of money or other things of value by the ITG to state Attorneys General or other state agencies (Requests 38-40)

- Documents and communications between the ITG and other trade association, organizations, and entities that refer or relate to Lansky (Requests 12-13, 27, 42-45)

- Documents relating to the provision of value to the ITG in return for conducting tracebacks or providing any other product or service (Requests 32-33, 41)

6

- Agreements and communications between the ITG and ZipDX and David Frankel, whom Lansky has sued in other cases, and any "cease and desist orders or the like" against ZipDX and Frankel that ITG has been involved in obtaining (Requests 36-37, 46-47)

On the day ITG first became aware of the Subpoenas, counsel for ITG and the Individual Recipients conferred by telephone. During the initial call, at ITG's request, Lansky agreed to defer the deposition dates for a reasonable amount of time so that the Subpoena Recipients could review the document requests therein. ITG indicated that upon initial review it appeared many of the document requests were unrelated to the ongoing Georgia Action against TransNexus and were more appropriately issued, if at all, in one of the ongoing Arizona actions. In response, counsel for Lansky stated Lansky expected to serve Subpoenas in the Arizona cases also. The call concluded with ITG's agreement to send to Lansky more formal responses and objections to the Subpoenas in the Georgia Action.

On October 2, 2023, Lansky requested that ITG accept service of two subpoenas for depositions of Messers. Bercu and Currie, and a third subpoena for documents only issued to Mr. Spalter, in the Arizona defamation suit Lansky is pursuing against David Frankel and ZipDX.[6] On October 4, 2023, ITG responded that it expected to accept service of the ZipDX Subpoenas on the condition that responses thereto be staggered until resolution of the Subpoenas issued in the Georgia Action. ITG further requested Lansky prioritize any particular request (of the 50 outstanding) in the Subpoenas for the Georgia Action so that ITG could more efficiently search for and produce relevant records or articulate its objections to doing so.

On October 10, 2023, ITG served Lansky with responses and objections to the Subpoenas and requested an extension of the date by which any motion to quash needed to be filed so the

---

[6] The Subpoenas that Lansky served upon the Individual Recipients in the action Lansky is pursuing against David Frankel and ZipDX are attached as **Exhibit H**.

7

parties could continue to meet and confer. Counsel sent a follow up email regarding the Subpoenas and extension on the evening of October 11, 2023. To date, undersigned counsel for ITG have received no response or other communication from Lansky's attorneys since their provision on October 2, 2023, of the ZipDX Subpoenas.

## ARGUMENT

Rule 45 of the Federal Rules of Civil Procedure requires a party or attorney issuing a subpoena take reasonable steps to avoid imposing an "undue burden or expense on a person subject to the subpoena." Fed. R. Civ. P. 45(d)(1). "The court . . . must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply." *Id.* When assessing whether a civil subpoena imposes an undue burden, a court should balance the relevance of the discovery sought, the requesting party's need, and the potential hardship to the party subject to the subpoena. Fed. R. Civ. P. 26(b)(1); *see also*, *e.g.*, *Harris v. Koenig*, 271 F.R.D. 356, 363 (D.D.C. 2010) ("A court is . . . bound by Rule 26[], which requires it to limit discovery if it determines that 'the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues.'"). This inquiry requires particular sensitivity to the costs and burdens imposed on third parties. *Watts v. S.E.C.*, 482 F.3d 501, 509 (D.C. Cir. 2007) ("The Rule 45 'undue burden' standard requires district courts supervising discovery to be generally sensitive to the costs imposed on third parties.").

## I. PLAINTIFFS' DEPOSITION DEMANDS ARE PATENTLY UNREASONABLE.

Lansky's demand that three individual ITG personnel—including USTelecom's President and CEO and ITG's Executive Director—sit for a combined 21 hours of deposition time is

unreasonable and borderline harassing, particularly where Lansky has already issued deposition notices for an *additional* 7 hours of deposition testimony (and nearly identical document requests) to Mr. Bercu and Mr. Currie in the Arizona defamation action.  See **Exhibit H.**

There is moreover no indication that any of the Individual Recipients have knowledge of the allegedly defamatory blog post underlying Lansky's allegations in the Georgia Action or that any of them could provide any testimony bearing on Lansky's claims arising therefrom.  Indeed, Mr. Spalter has provided an affidavit in support of this motion declaring his unfamiliarity with the circumstances giving rise to the ongoing litigation between Lansky and TransNexus.  Although ITG recognizes that it is "rare for a court to prohibit altogether the taking of a deposition," courts do and have required plaintiffs to take the testimony of other, lower-level employees first to protect high-level executives from harassment and undue burden particularly where, as here, such executives "do not have unique or superior knowledge of the facts at issue." *United States v. Philip Morris Inc.*, 2002 WL 35667875, *1-*2 (D.D.C. Oct. 3, 2002) (citing *Salter v. Upjohn Co.*, 593 F.2d 649, 651 (5th Cir. 1979)).

*Second*, ITG has already produced any documents in the organization's possession, custody, or control that are even tangentially relevant pursuant to the subpoena served by TransNexus on ITG in June.  By reviewing those documents, Lansky should be able to identify the proper witnesses to testify about their contents and any relevant related matters.  If Lansky is unable to do so, Lansky should seek a knowledgeable witness pursuant to Federal Rule of Civil Procedure 30(b)(6), not simply issue subpoenas scattershot to the individuals who have some role with the organization.

*Third*, even assuming the Individual Recipients have knowledge about the many documents requested in the Subpoenas, as further discussed below, those requests seek information

that is plainly irrelevant to Lansky's claims in the Georgia Action. Given the lack of any apparent relevance or legitimate need for the deposition testimony, the substantial burden of having three high-level employees each take time away from their many work responsibilities to appear for hours of testimony, and the demonstrated intent by Lansky to seek additional deposition testimony of these individuals in unrelated pending actions, it is clear that the Rule 26 balancing weighs heavily against enforcing the deposition demands in the Subpoenas. Far from showing "particular sensitivity" to the costs and burdens imposed on third parties, the deposition demands do just the opposite; indeed, they amount to little more than harassment.

*Finally*, it is notable that Lanksy did not attempt to serve the subpoenas until September 27, 2023, less than two weeks prior to the indicated deposition dates on October 10-12. Although Lansky agreed to defer the depositions for a reasonable period, opposing counsel's failure to respond to any communications since October 2, 2023, necessitate the filing of this motion, which might otherwise become untimely.

## II.  THE DOCUMENT REQUESTS IN THE SUBPOENAS ARE OVERBROAD AND UNDULY BURDENSOME.

### A.  The documents sought are plainly unrelated to the claims in the Georgia Action.

Each of the Subpoenas includes 50 requests for documents, the vast majority of which have no conceivable relevance to the claims and issues in the Georgia Action, which, as noted, arises from an allegedly defamatory blog post by TransNexus about Lansky. *See* **Exhibit D**. Although Courts construe "relevance" broadly, it is well settled that they will not endorse "'fishing expeditions,' discovery abuse and inordinate expense involved in overbroad and far-ranging discovery requests." *Hardrick v. Legal Servs. Corp.*, 96 F.R.D. 617, 618 (D.D.C.1983). Instead, courts tailor discovery "to the issues involved in the particular case," *id.*, and deny discovery where, as here, "there is little reason to believe that the information sought will be 'relevant to the

10

subject matter involved in the action.'" *AF Holdings, LLC v. Does 1-1058*, 752 F.3d 990, 995 (D.C. Cir. 2014) (overturning denial of motion to quash subpoenas) (quoting Fed. R. Civ. P. 26); *see also Food Lion v. United Food & Commercial Workers Union*, 103 F.3d 1007, 1012 (D.C. Cir.1997) ("[N]o one would suggest that discovery should be allowed of information that has no conceivable bearing on the case." (internal quotation marks omitted)).

Lansky's demands for documents identifying all ITG employees and independent contractors, documents relating to all webinars and testimony the ITG has given on any subject, and records regarding the ITG's membership application process are facially irrelevant to the defamation and related claims Lansky has brought against TransNexus in the Georgia Action.

Likewise irrelevant are documents concerning the ITG's process for making tracebacks, records of all tracebacks it has processed, all communications between the ITG and regulators, and all ITG communications and agreements with third parties. Indeed, one is hard pressed to find *any* document request in the Subpoenas that seeks the disclosure of information that is reasonably calculated to lead to the discovery of evidence relevant to the issues in the Georgia Action.

Moreover, it is clear from the face of the Subpoenas that nearly all of Lansky's document requests are designed to obtain information for possible use in other proceedings. That is not a proper use of discovery. As the Supreme Court has made clear and the D.C. Circuit has reaffirmed, "'when the purpose of a discovery request is to gather information for use in proceedings other than the pending suit, discovery properly is denied.'" *AF Holdings*, 752 F.3d at 999 (D.C. Cir. 2014) (quoting *Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 352 n.17 (1978)).

Lansky is a party to two lawsuits pending in the District of Arizona. In one case, he has sued ZipDX and David Frankel for making allegedly false and defamatory statements (distinct from defamatory statements underlying the Georgia Action) indicating Lansky was involved in

11

making illegal robocalls. *See* **Exhibit F**. In a second suit, the Attorneys General of 49 States have sued Lansky for his alleged facilitation of 7.5 billion illegal robocalls. *See* **Exhibit E**. Numerous document requests in the Subpoenas appear to be aimed at acquiring information for possible use in these separate cases, including the requests for:

- Documents and communications with various State AG's offices about Lansky (**Exhibit B**, Requests 28-31, 50)[7]

- Documents relating to the provision of money or other things of value by ITG to state Attorneys General or other state agencies (**Exhibit B**, Requests 38-40)

- Agreements and communications between ITG and ZipDX and David Frankel, and any "cease and desist orders or the like" against ZipDX and Frankel in which ITG has been involved (**Exhibit B**, Requests 36-37, 46-47)

Here, as in *AF Holdings*, "one can easily infer" that the purpose of the Subpoenas is "to attain information that was not, and could not be, relevant to this particular suit. Such use of the discovery procedures is prohibited." *AF Holdings*, 752 F.3d at 999. Like the plaintiff in *AF Holdings*, Lansky has "abused the discovery process," *id.* at 997, and, therefore, the Subpoenas should be quashed.

### B. ITG has already produced, and Lansky already has received, records responsive to the Subpoenas.

Finally, ITG has already produced hundreds of pages of records in response to a subpoena issued by Defendant TransNexus in the Georgia Action. *See* **Exhibit H**. ITG understands from TransNexus that Lansky already has in its possession a copy of ITG's production, which contains numerous items covered by the Subpoenas at issue here. For example, the TransNexus subpoena—which was much more narrowly drawn than the Subpoenas at issue here—requested records of all traceback requests involving Lansky; communications and correspondence relating

---

[7] The citations here are to the Bercu Subpoena, but the requests in all three Subpoenas are nearly identical.

to those tracebacks; documents relating to any traceback investigation" provided by the ITG as part of any referral to any federal or state enforcement authority involving Avid Telecom in any way; and documents provided by the IGT in response to any subpoena, Civil Investigative Demand, or other legal process that relate to, refer to, or involve Avid Telecom in any way. To the extent that the ITG has such records in its possession custody or control, it has produced them in response to the TransNexus subpoena, and Lansky already has them. To the extent that Lansky's Subpoenas demand the production of the same information, they are "unreasonably cumulative or duplicative" and must be quashed. Fed. R. Civ. P. 26(b)(2).

## CONCLUSION

For the foregoing reasons, the Petitioners respectfully submits that the Motion to Quash the Subpoenas should be granted.

Dated: October 12, 2023

Respectfully submitted,

By: */s/ Jacob Sommer*
**ZWILLGEN PLLC**
Jacob Sommer (DC Bar ID No. 494112)
1900 M Street NW, Suite 250
Washington, DC 20036
(202) 296-3585

*Counsel for Petitioners*

## CERTIFICATE OF SERVICE

I certify that on this 12th day of October 2023, a true and correct copy of the foregoing Memorandum of Law, and the Exhibits and Declaration In Support Thereof, were filed with the Court via the Court's electronica filing system and was served by me on the parties below via electronic mail to counsel's email and overnight parcel delivery.

                                               */s/ Jacob Sommer*
                                               Jacob Sommer (DC Bar ID No. 494112)

Neil Ende, Esq.
**TECHNOLOGY LAW GROUP, LLC**
5335 Wisconsin Avenue NW
Suite 440
Washington, D.C. 20015
nende@tlgdc.com

Todd E. Jones, Esq.
Taylor English Duma LLP
1600 Parkwood Circle
Suite 200
Atlanta, GA 30339
tjones@taylorenglish.com